# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

COREY KINDINGER,  ) Case No.: 2:06-cv-00896-RLH-LRL
             )
      Plaintiff,  ) **O R D E R**
             )
      vs.        ) (Motion for Summary Judgment–#22)
             )
BOULDER STATION, INC. d/b/a )
BOULDER STATION HOTEL AND CASINO, )
             )
      Defendant.  )
_____)

Before the Court is Defendant Boulder Station, Inc's **Motion for Summary Judgment** (#22), filed April 5, 2007. The Court has also considered Defendant's Reply (#24), filed May 4, 2007. To date, Plaintiff has not filed an Opposition.[1]

## BACKGROUND

This case arises from allegations of employment discrimination. Plaintiff, a gay male, began his employment with Defendant on January 24, 1997, and was later terminated on April 21, 2005. (Compl. ¶ 15, 23.) Plaintiff was hired as a food server in the catering and room service department and worked under the direct supervision of, among others, Henry Garcia

---

[1] In its Reply brief, Defendant cites to Local Rule 7-2(d) for the proposition that Plaintiff's failure to file an Opposition constitutes a consent to the granting of the instant Motion. However, the Court notes that this Rule does not apply to motions for summary judgment. *Mirage Resorts, Inc. v. Stirpe*, 152 F. Supp. 2d 1208, 1213 (D. Nev. 2000).

1

("Garcia"), the director of food and beverage. (Compl. ¶ 15.) Beginning in or about 2000-2001 and continuing to the present, Defendant and its agents allegedly subjected Plaintiff to unwelcome sexual harassment in the workplace, which allegedly created a hostile and offensive work environment. (Compl. ¶ 17.) Plaintiff further alleges that Defendant and its agents treated him differently from other employees because of his sexual orientation and that sexual derogatory statements were aimed at him. (Compl. ¶ 18, 20.)

Plaintiff claims that he repeatedly made Defendant aware of the actions taken by its agents, specifically Garcia, but Defendant's investigation into his allegations were allegedly incomplete and inaccurate. (Compl. ¶ 19.) As a result, Plaintiff alleges that he has been severely damaged, suffered loss of economic benefit, and was terminated from his employment. (Compl. ¶ 27.) After his termination, Plaintiff filed a charge of discrimination ("initial charge") with the Equal Employment Opportunity Commission ("EEOC") on or about June 15, 2005. (Compl. ¶ 7.) In the initial charge, Plaintiff alleged discrimination based on sex and sexual orientation. He further alleged that Garcia subjected him to harassment "on or about March 30, 2005, through April 21, 2005." (Def.'s Mot. Summ. J., Ex. A.)

Following his filing of the initial charge, Plaintiff alleges that Defendant and its agents undertook a series of acts of retaliation and reprisal against him. (Compl. ¶ 21.) About six months later, Plaintiff filed an amended charge of discrimination ("amended charge") to assert a retaliation claim. (Compl. ¶ 7.) The EEOC subsequently issued Plaintiff a notice of right to sue letter, whereby Plaintiff commenced these proceedings against Defendant on July 21, 2006. (Compl. ¶ 9.) To defend, Defendant claims that it did not sexually harass or discriminate against Plaintiff. In fact, Defendant claims that Plaintiff never reported any discriminatory treatment to anyone, namely Defendant, until after his termination. Defendant further claims that it terminated Plaintiff because of his grossly dishonest conduct and violation of its policies and procedures.

In his Complaint, Plaintiff appears to bring claims of retaliation, sexual harassment, and discrimination based on his sexual orientation under Title VII of the Civil Rights

2

Act of 1964 and Chapter 613 of the Nevada Revised Statutes.[2] Defendant now moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff has abused the discovery process and has failed to prosecute the current matter. Further, Defendant moves for summary judgment on the merits of all claims arguing that there are no genuine issues of material fact.

## DISCUSSION

As an initial matter, the Court notes that in the interests of judicial economy, it will address the merits of Plaintiff's Complaint with respect to Defendant's Motion for Summary Judgment.

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).

---

[2] Plaintiff's Complaint specifically alleges that Defendant violated Nev. Rev. Stats. §§ 613.420 and 610.330. First, Nev. Rev. Stat. § 613.420 does not provide a cause of action, rather it "requires an employee alleging employment discrimination to exhaust administrative remedies by filing a complaint with the [Nevada Equal Rights Commission ("NERC")], before filing a district court action." *See Pope v. Motel 6*, 114 P.2d 277, 280 (Nev. 2005). Second, Nev. Rev. Stat. § 610.330 does not exist. It appears that Plaintiff intended to cite Nev. Rev. Stat. § 613.330, which prohibits unlawful employment practices, and Nev. Rev. Stat. § 613.340, which prohibits retaliation. Accordingly, the Court construes Plaintiff's Complaint to allege violations under Nev. Rev. Stats. §§ 613.330 and 613.340.

1  Once the moving party satisfies the requirements of Rule 56, the burden shifts to
2  the party resisting the motion to "set forth specific facts showing that there is a genuine issue for
3  trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-
4  moving party "may not rely on denials in the pleadings but must produce specific evidence,
5  through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*
6  *Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there
7  is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*
8  *Corp*, 475 U.S. 574, 586 (1986).

## II. Analysis

10  Plaintiff brings all of his claims under Title VII of the Civil Rights Act of 1964
11  ("Title VII") and Nevada Revised Statutes ("NRS") §§ 613.330 and 613.340.  Courts analyze
12  discrimination claims brought under federal and Nevada state law by applying the *McDonnell-*
13  *Douglas* "burden-shifting" analysis.  *See Apeceche v. White Pine County*, 615 P.2d 975, 977-78
14  (Nev. 1980).  Under the *McDonnell-Douglas* analysis, a plaintiff may indirectly establish
15  employment discrimination with the following three-step process.  *See McDonnell Douglas Corp.*
16  *v. Green*, 411 U.S. 792, 802-04 (1973).  First, a plaintiff must establish a prima facie case of
17  unlawful discrimination.  Second, if the plaintiff meets this burden, then the burden shifts to the
18  defendant to articulate a legitimate, non-discriminatory reason for its action.  Third, if the
19  defendant carries its burden, the burden shifts back to plaintiff to demonstrate with specific and
20  substantial evidence that the defendant's articulated reason is a pretext for intentional
21  discrimination.  *Id; Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993).  Bearing this
22  framework in mind, the Court proceeds to address each of Plaintiff's claims.

### A. Sexual Orientation Discrimination

24  Plaintiff alleges that Defendant and its agents discriminated against him by treating
25  him differently from other employees because of his sexual orientation.  Both Title VII and
26  Nevada's anti-discrimination law prohibit sex discrimination in the workplace. 42 U.S.C. §

2000e-2(a)(1); Nev. Rev. Stat. § 613.330(1). Specifically, Title VII prohibits an employer from discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, Nevada's anti-discrimination law prohibits an employer from discharging or discriminating "against any individual with respect to his compensation, terms, conditions or privileges of employment, because of his . . . sex [or] sexual orientation." Nev. Rev. Stat. § 613.330(1)(a).

Title VII, unlike Nevada's anti-discrimination law, does not prohibit discrimination based on sexual orientation. 42 U.S.C. § 2000e-2(a)(1); *DeSantis v. Pacific Tel. & Tel. Co., Inc.*, 608 F.2d 327, 329-30 (9th Cir. 1979), *abrogated on other grounds by, Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001). Rather, Title VII prohibits discrimination based on sex or gender. 42 U.S.C. § 2000e-2; *DeSantis,* 608 F.2d at 330. In applying that prohibition here, Plaintiff's sexual orientation claim under Title VII must be dismissed. To the extent that Plaintiff's initial charge alleges discrimination based on sex, the Court considers below whether Plaintiff makes a prima facie showing of sex discrimination under Title VII. Applying the same analysis, the Court will also consider whether Plaintiff makes a prima facie showing of sexual orientation discrimination under Nevada's anti-discrimination statute.

To assert a sex and sexual orientation discrimination claim, Plaintiff must make out a prima facie case establishing that: (1) he is a member of a protected class, (2) he was qualified for the job, (3) he was satisfying the job requirements, (4) he was discharged, and (5) other similarly situated employees who were not members of the protected class were treated more favorably. *See Apeceche v. White Pine County*, 615 P.2d 975, 977 (Nev. 1980). Here, Plaintiff asserts that he is a gay male, which establishes that he is a member of two protected classes; that is, men and homosexuals. Thus, Plaintiff satisfies the first prong. Next, Plaintiff alleges that he was hired as a food server and that his job performance, attendance, and punctuality had been exemplary during his employment with Defendant, thereby satisfying the second and third prongs.

5

1  The fourth prong is also satisfied because there is no dispute that Plaintiff was terminated by
2  Defendant on April 21, 2005.

3  At issue is the fifth prong, whereby Plaintiff's Complaint fails to allege that others
4  similarly situated were treated more favorably. However, in looking at Plaintiff's initial charge,
5  therein he alleges that "other similarly situated female employees, such as Mandy and Regina,
6  committed [the] same infraction, but they were not discharged." (Def.'s Mot. Summ. J., Ex. A.)
7  This allegation meets the minimal showing required to establish the fifth prong of the prima facie
8  case with respect to Plaintiff's sex discrimination claim. However, Plaintiff fails to meet the fifth
9  prong as to his sexual orientation claim by failing to allege that similarly situated non-
10 homosexuals were treated more favorably. Accordingly, the Court finds that Plaintiff has met his
11 burden of establishing a prima facie case of sex discrimination. The burden now shifts to
12 Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff.

13 To meet its burden, Defendant claims that it terminated Plaintiff because he
14 violated the catering gratuity policy ("gratuity policy") and misappropriated tips. Defendant
15 explains that Plaintiff, as lead server, was given the responsibility of distributing tips to his co-
16 workers in his department. The procedures and guidelines governing the handling of gratuities are
17 fully set forth in Defendant's gratuity policy. Defendant claims that Plaintiff failed to abide by the
18 terms of the gratuity policy when he allocated a portion of a tip for himself for an event that he did
19 not work. For the same event, Defendant claims that Plaintiff also improperly allocated $100.00
20 from a room charge to the tip pool.

21 Defendant investigated these alleged actions and took further action by holding a
22 due process meeting with Plaintiff. After that meeting, Plaintiff was suspended on April 19, 2005,
23 pending further investigation. Defendant's investigation revealed that Plaintiff had allegedly
24 misappropriated tips on several different occasions. As a result, Defendant terminated Plaintiff for
25 his allegedly gross dishonest conduct and for violation of the policy and procedures. Plaintiff
26 subsequently exercised his right to appeal the termination by requesting that the director of human

AO 72
(Rev. 8/82)

resources review the decision, and thereafter, requesting a hearing before the team member council. Both the director and team member council affirmed the decision to terminate Plaintiff. Based on the above, the Court finds that Defendant has sufficiently met its burden by articulating a legitimate, nondiscriminatory reason for terminating Plaintiff.

Because Defendant has met its burden, the burden now shifts back to Plaintiff to establish that Defendant's reason for terminating him was a pretext for discrimination. Plaintiff can show pretext in two ways, "either (1) directly by persuading the court that a discriminatory reason more likely motivated the employer or (2) indirectly by showing the employer's proffered explanation is unworthy of credence." *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987) (citation omitted). In the case at bar, the only evidence derived from Plaintiff's Complaint and deposition that may show pretext is the allegation of sexual derogatory statements. Plaintiff's deposition testimony asserts that Garcia made three sexual derogatory statements. (Def.'s Summ. J., Ex. A.)

The first and second statements were allegedly made while Garcia and Plaintiff were located at Sunset Station Casino and at a time when Garcia was not yet employed by Defendant. (*Id*.) Because the alleged statements were not made on Defendant's premises or by an agent of Defendant, Plaintiff fails to show that Defendant's reason for terminating Plaintiff was because of his sex. Turning to the third statement, Garcia allegedly said the word "faggot" under his breath while he and Plaintiff were employed by Defendant. This alleged comment is both inappropriate and offensive, however, this stray remark alone is insufficient to show that Plaintiff was terminated because of his sex. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (stray remark, without more, is insufficient to show decision not to promote was based on age). For the above reasons, the Court finds that there are no genuine issues of material fact and that Plaintiff's sex and sexual orientation discrimination claims fail as a matter of law.

**B. Sexual Harassment**

In regards to his sexual harassment claim, Plaintiff appears to allege that

Defendant and it agents subjected him to unwelcome sexual harassment because of his sexual orientation. Sexual harassment constitutes sex discrimination in violation of Title VII and Nevada's anti-discrimination statute. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986); *Nichols v. Azteca Rest. Enters. Inc.*, 256 F.3d 864, 871 (9th Cir. 2001). Although Title VII does not prohibit discrimination based on sexual orientation, it does prohibit sexual harassment that arises because of one's sex. *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 106 (9th Cir. 2002) (holding that an employee's sexual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment.) Thus, it is irrelevant that Plaintiff is a homosexual, the issue is whether he was sexually harassed because of his sex.

Generally, sexual harassment claims are brought under either a "quid pro quo" or "hostile work environment" theory. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Here, Plaintiff brings his sexual harassment claim under a hostile work environment theory.

### 1. Hostile Work Environment

To prove sexual harassment under a hostile work environment theory, Plaintiff must show that (1) he was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Ellison,* 924 F.2d at 875-76. A workplace permeated with "'discriminatory intimidation, ridicule, and insult' . . . is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993) (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 67). In determining whether an actionable hostile work environment claim exists, courts must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

In this case, the Court relies solely on the allegations in Plaintiff's Complaint and deposition to determine whether Plaintiff makes a prima facie showing of sexual harassment. The only specific, non-conclusory allegation of sexual harassment made by Plaintiff is that Defendant and its agents made "derogatory sexual statements" to him. (Compl. ¶ 20.) As discussed earlier, *supra* II.A., Plaintiff's deposition discussed three separate derogatory sexual statements allegedly made by Garcia.

For the sake of argument, the Court assumes that Plaintiff satisfies the first and second prong of the prima facie case by showing that he was subjected to verbal conduct of a derogatory sexual nature and that the conduct was unwelcome. However, the third prong cannot be met on the facts alleged here. First, neither the allegations in the Complaint nor Plaintiff's deposition testimony assert facts to suggest that Defendant's conduct or Garcia's statements were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment or created an abusive working environment. *See Faragher*, 524 U.S. at 788 (simple teasing, offhand comments, and isolated incidents will not amount to discriminatory changes in the terms and conditions of employment.) Second, two of the alleged statements were made when Plaintiff was not on Defendant's premises. Therefore, it cannot be held that such statements interfered with Plaintiff's working environment.

For the reasons stated, Plaintiff fails to make a prima facie showing of sexual harassment based on a hostile work environment theory. The Court therefore finds that summary judgment must be entered in favor of Defendant on this claim.

**C. Retaliation**

Plaintiff next raises a retaliation claim alleging that Defendant and its agents retaliated against him after filing his initial charge with the EEOC. It is unlawful to discriminate against an employee who makes a charge under Title VII or Nevada's anti-retaliation law. 42

9

1  U.S.C. § 2000e-3(a); Nev. Rev. Stat. § 613.340.  To establish a prima facie case for retaliation,
2  Plaintiff must show that: (1) he was engaged in a protected activity; (2) he was subjected to an
3  adverse employment action; and (3) there is a causal link between the protected activity and the
4  adverse employment action.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir.
5  2003) (citations omitted); *see also Pope v. Motel 6*, 114 P.3d 277, 281 (Nev. 2005) (relying on
6  Title VII cases to interpret Nev. Rev. Stat. § 613.340).
7            Here, Plaintiff only asserts that filing his initial charge with the EEOC caused
8  Defendant and its agents to retaliate against him.  There is no dispute that Plaintiff also filed a
9  discrimination charge with NERC.  Because the filing of a charge with the EEOC and NERC is a
10 protected activity, Plaintiff meets the first prong of the prima facie case.  *See Mannikko v.*
11 *Harrah's Reno, Inc.*, 630 F. Supp. 191, 197 (D. Nev. 1986).
12            To satisfy the next prong, Plaintiff's Complaint appears to assert three instances of
13 alleged adverse employment actions taken in retaliation against him for filing the initial charge: (1)
14 he was terminated from his employment; (2) derogatory sexual statements were directed against
15 him; and (3) a bad and false reference was provided, thereby making it impossible for him to
16 obtain employment.  Plaintiff's first and third allegations of employment actions constitute adverse
17 actions to satisfy the second prong.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064
18 (9th Cir. 2002) (termination is an adverse employment action); *Hashimoto v. Dalton,* 118 F.3d
19 671, 676 (9th Cir. 1997) (dissemination of a negative job reference constitutes an adverse
20 employment action).  However, Plaintiff's second allegation of derogatory sexual statements do
21 not constitue adverse employment action.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 929
22 (9th Cir. 2000) (bad mouthing an employee outside the job reference context does not constitute
23 adverse employment action).  Because Plaintiff adequately satisfies the second prong with respect
24 to the alleged adverse actions of termination and false references, the Court turns to the third
25 prong.
26 / / / /

10

Plaintiff must now show a causal connection between his filing of the initial charge and the adverse employment actions taken by Defendant and its agents. In addressing the third prong, courts have generally held that causation can be inferred from timing alone where the adverse action follows closely on the heels of the protected activity. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that the temporal proximity must be "very close"). In regards to Plaintiff's termination, the facts show that Plaintiff did not engage in any protected activity prior to his termination. In fact, Plaintiff filed his initial charge on or about June 15, 2005, *after* his termination on April 21, 2005. Therefore, Plaintiff fails to establish a causal connection between his filing of the initial charge and his termination.

Plaintiff also fails to meet the third prong with respect to his allegation of a bad and false reference. In his Complaint, Plaintiff alleges that Defendant and its agents undertook a series of acts of retaliation, including, but not limited to a "bad and false reference making it impossible to obtain employment." (Compl. ¶ 21.) From this allegation, the Court cannot infer that the alleged bad and false reference was disseminated because of Plaintiff's filing of an initial charge. Plaintiff's conclusory allegation, without more, fails to establish a causal connection between his protected activity and the adverse action. Therefore, Plaintiff fails to satisfy the third prong.

In sum, Plaintiff fails to make a prima facie showing of retaliation. Accordingly, the Court grants summary judgment in favor of Defendant.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#22) is GRANTED.

Dated: June 19, 2007

_____
ROGER L. HUNT
Chief United States District Judge

11